Mr. Cohen. Yes, your honor. Thank you. And thank you for having me here. It's great to be here. I love this place. I was born and raised in Palo Alto and spent the first 24 years of my life in Palo Alto. And the last few weeks I've been in Las Vegas, Nevada. So I'm even more grateful because I'm in the middle of a criminal tax trial defending Mr. Carey, whose case is before you civilly. Great. Is it pronounced Carey? Carey. Yes, your honor. Thank you. Go ahead. Okay. Well, there are a number of things that might help you understand how we got to a RICO case. And I want to give you a little bit more context because this is a very simple case from my perspective. We've clearly stated a claim for relief. And Judge Ezra, who's the trial judge before whom we're trying this case, where my client is in much better shape than he was a couple years ago, the first trial in 2007 where he was prosecuted on 109 counts ended in a hung jury, nine for not guilty and three for guilty. Now we're down to where he's only being prosecuted on 57 counts, so we've gotten rid of 52 of them. Unfortunately... Is that relevant to this? I think it is, your honor, because he's being prosecuted by the same person, assisted by the same person who was stripped of qualified immunity that goes back to May 29th of 2003 in the Bivens case. The government says, oh, this RICO case is just the same thing as the Bivens case, and accordingly it's barred from being prosecuted and we haven't stated a claim and so on and so forth. Counsel, what's the enterprise here? The enterprise? The enterprise is the joint activities of Assistant U.S. Attorney Gregory Dam and IRS Special Agent Jared Halper in the Criminal Investigation Division of the IRS conducting their little private grand jury sessions of which there have been several. It's just Mr. Dam and one witness, his co-defendant in the Bivens case and in this RICO case, both of whom were stripped of their qualified immunity before they ever went to the grand jury, which is really unprecedented. You keep referring to it as being stripped of qualified immunity. The holding was they weren't entitled to qualified immunity. There's no stripping. Well, your honor, I think that, generally speaking, officers are cloaked with immunity. Would you agree with denied? I beg your pardon? Would you agree with denied? However the court wishes to characterize it, I'm content. Go ahead. So they were denied qualified immunity. This is quite different from the Los Angeles case, the Rampart case, where there was kind of a separate department with hundreds of officers in it. You can see there that there was an enterprise, but I have a little difficulty finding two officers of the federal government in conversation about what involves law enforcement constituting an enterprise. Oh, well, your honor, these two were just the leaders. There were dozens of people who assisted them in the same fashion as happened in the Diaz v. Gates case that your honor just referred to, which is the en banc decision of this court, which I merely followed and applied the law that this court laid down in Diaz v. Gates with respect to state officials against these federal officials who conducted a far more nefarious enterprise and did an enormous amount of damage. Mr. Diaz, after all, was just a single individual. Here, Mr. Kerry, in the year 2002, generated gross receipts of $29 million. After this raid, he was basically wiped out and was operating various legal businesses, including a payroll scheme. I wanted to explain to you how this really arose. It arose because of a new kind of money that the United States Congress provided for in 1985, provided for gold and silver coins as an alternative to the paper money system that is now currently being tarped, that is to say being supported by credits and sophisticated accounting that my client doesn't really understand. He's not a college-educated man. Bottom line, he never paid his taxes, at least for 10 years. Well, he certainly didn't pay them voluntarily, although they've collected more than a half a million dollars by illegally arresting him and seizing his payroll. But for 10 years, he didn't file a tax return or pay any tax. He still hasn't filed and paid because he doesn't believe he's required to. Well, that's the problem, isn't it? Well, that's one of the problems, Your Honor, but that's the problem that's led to me defending him in Las Vegas, and for which I'm grateful that you got me out of that so I could get a couple days off and come to San Francisco because we've got six more weeks left of that. He's being prosecuted criminally for that. But that's not really before this Court, other than that it represents the continued persecution of my client by a prosecutor and an IRS agent who have an agenda to protect themselves from civil litigation against them after they were denied their immunity. Let's assume that you have properly pled an enterprise. Tell me what claims that you can bring under RICO that you could not have brought in your Bivens section. Well, we couldn't have brought any of the pattern of racketeering activity that didn't emerge until after we had filed it. Individual violations. They did this here, they did this here. Specifically, the subordination of perjury, the violations of Title 18 of the United States Code, Section 1512, Your Honor, engaging in misleading conduct toward witnesses against my client. They put on now, they just a couple of weeks ago put a man named Hagedorn on the witness stand. Mr. Hagedorn. Why couldn't this be in the Bivens action? Because the Bivens action culminated in the raids that took place on May the 29th, 2003. What I'm describing for Your Honor in response to Judge Hawkins' question are things that happened long after that and are still happening in the middle of this trial. Manipulating, controlling witnesses against my client for their own personal benefit. Could you amend your Bivens action and add those claims? Could I amend the Bivens action? I suppose if the court gave me leave, I could conflate those two cases, but they really would be very confusing because my client is the only RICO plaintiff in this one. The claims you're describing relate to things that occurred after the raid, correct? Yes, Your Honor. And that led up to the original prosecution resulting in hung jury? Yes, Your Honor. And the follow-on prosecution that's just going on now? Yes, Your Honor. Wouldn't those claims be heck barred if your client lost, if your client was convicted? I don't think so. Tell me why not. Well, I think even if my client is found guilty of committing tax crimes, that does not give government agents denied immunity license to engage in criminal activity to bring that about. That has nothing to do with his guilt. They destroyed a lawful business. The mere fact that somebody doesn't pay their taxes, even if they've done so criminally, does not give the government agents stripped of immunity, denied immunity, license to engage in racketeering activity. So you don't think that a criminal conviction would, that following that, following a civil action, complaining about things that led to that conviction would necessarily implicate the heck bar? I'm sure the government will argue emphatically that it does, Your Honor. Then I'm asking you. Well, as a matter of pure legal theory, no. As a matter of practicality, if Mr. Carey is convicted, he'll be bankrupt, that he's close to that now, and he won't be able to pursue his claims anyway, as a practical matter. You're down to under two minutes. Did you want to save any time for rebuttal? I wanted to save 15 minutes for rebuttal, but I guess I only get two minutes. Thank you, Your Honor. You get exactly what every case of your type allows, okay? There's no need for sarcasm in this courtroom, okay? You got exactly the amount of time that every case like this gets. The clock is right in front of you. You have a minute and 49 seconds left. Is there any confusion in what I just explained? Not any, Your Honor. Then sit down. We'll hear from the government at this time. Good morning, Your Honor. Gretchen Wolfinger for the Federal Appellees. I'd like to start briefly with you. Can I divide any time here? Yes, Your Honor. I am taking seven minutes, and co-counsel is taking three. Okay. Briefly, I'd like to address the argument that we made in your brief about the RICO suit being duplicative of the Bivens suit.  And it's clear that Mr. Cary was just trying to recast his Bivens suit after he suffered some setbacks in that case as a RICO suit, and there's no basis for permitting him to bring the duplicative suit. But in addition, there's no basis legally for the RICO suit that he's brought.  It's a matter of law that events which have taken place after you have brought your Bivens action don't need to be brought by way of amendment. They can be brought in a separate suit. So if we're looking at all conduct which happened after the filing of the Bivens complaint, perhaps that's allowed? I would argue in this case it was not, Your Honor. The Bivens suit was originally brought in October of 2003. It was amended again in October of 2004. A second amended complaint was brought in September of 2005, and Mr. Cary attempted to file a proposed third amended complaint in May of 2006. It is unclear to me from either the RICO complaint or the discussion that's occurred here today and Mr. Cary's brief what exactly are the events that occurred after he filed the original Bivens suit, but that certainly I believe would have been encompassed by the third amended complaint that he tried to file in March 2006, which then became the basis for the RICO complaint. So there's nothing that happened post-2006 that's involved? There may have been some, the indictments, but as we argue in our brief, the prosecutor would have had absolute immunity for the bringing of the indictments. With regard to the RICO suit itself, it was correctly dismissed by the district court because there is, in fact, no basis for the RICO suit against any of the defendants. One of the problems with the complaint is that it speaks very generally about the defendants and fails to attribute actions to other than the defendants, that is to any particular defendant named in the case caption. What's the status of the Bivens action? The status of the Bivens action, I believe, and Mr. Cohan can speak to this, I believe, more accurately, I believe it is being held in abeyance pending the completion of the criminal case. He can tell us that when he gets up. I believe, Your Honor. Specifically, in count one, the complaint charges Dam and Halper with a violation of 1962B. That requires that they maintain or have a proprietary interest in the enterprise. As the discussion here this morning indicates, it's somewhat confusing what the enterprise is, whether it's the U.S. Attorney's Office and the IRS or Dam and Halper associating in fact, but it's clear that they did not acquire or maintain any proprietary interest in the enterprise, either the two government agencies or themselves associating in fact. So there's no claim that can be brought under 1962B. The remaining defendants are alleged to have violated 1962C. And I'd first like to address several defendants, Burns, Ernst, Flowers, Graham, Healy, Holland, Lowry, McDunick, and Mickelson. Although they are named in the case caption, there's nothing in the complaint that indicates what activities they engaged in. So it's clear that under Rule 8 they had absolutely no notice of what they had done, and there's certainly no indication of how they engaged in any racketeering acts. In addition, Lowry and Mickelson were never properly served, so there was no jurisdiction in the district court. That brings us to the remaining defendants, Crother, Denn, Lee, Lott, Manzer, Peace, and Talley. As an initial starting point under 1962C, they must have participated in at least a pattern of racketeering activity, which is at least two acts of racketeering activity, and that requires continuity as well. And that doesn't exist for any of these defendants. Crother was involved in one act, which was providing security for one occupant of a search site. Denn, Lott, and Talley, all their acts occurred on the same day when they received the money from the shoulder bag. Lee interviewed one person. Peace had contact with only one witness, and her conduct extended over less than or his conduct extended over less than one week. And Manzer had contact with several witnesses, but all on the days of the search. So there's clearly no pattern of racketeering activity with these defendants. And by my calculations, that leaves no defendants that have violated the RICO statute. How about Mr. Dam? Mr. Dam, well, he was charged with, according to Count 1, with a 1962B violation. He was not named along with the other defendants as violating 1962C. And as I explained previously, that requires that he acquire or maintain a proprietary interest in the enterprise, which he did not. With regard to any specific activity he engaged in, I don't see that it violated any of the alleged predicate statutes for RICO, as we've explained. He was alleged to have obtained indictments for which he would have absolute immunity. Well, of course, they contend it was for personal purposes because he was being sued in the Bivens action and did not have qualified immunity so that if he lost in the Bivens action, he would be potentially liable for damages. Yes, and I don't believe that's a correct interpretation of the facts. He was not bringing the suit on behalf of himself. He was bringing the indictments on behalf of the United States. Well, but they contend that because he had this potential liability in the Bivens action, that it was being brought for his own purposes and not for the government's. Your Honor, I would like to respond to your question, but I see that I'm into co-counsel's time. Go ahead and respond. Thank you. Even if that were correct, and I would mention first that I believe that Mr. Carey tried to disqualify Mr. Dam from further participation in the criminal trial and the district court judge denied that, and secondly, I don't see how that conduct fits into one of the RICO predicate statutes. It certainly isn't a robbery, Hobbs Act robbery. It certainly isn't kidnapping, witness tampering, witness retaliation. There's nothing in the complaint that would allow him to fit into the RICO statute. Okay. Thank you, Your Honors. Good morning. May it please the Court. Todd Bice on behalf of the individually named North Las Vegas Police Department officers, sort of collectively known as the North Las Vegas SWAT team. Our sole involvement in this is that the SWAT team provided force support on May 29th of 2003 for the federal government to conduct its raid and execute the search warrants. There are no allegations in the complaint of the SWAT team's involvement in this matter after that date. This is now the second case that has arisen for the SWAT team as a result of that raid. The first was a Section 1983 claim that was brought in the original Bivens action against these officers. That claim was adjudicated in favor of the officers. It was appealed to this court, and this court sustained the district court's dismissal of that action. Now what has happened is, is that Mr. Curry has turned around and filed a RICO claim against the identical officers involving the exact same facts. But the Bivens action itself was not dismissed. The Bivens action against the federal officers was not dismissed. But the claim against the state officials was adjudicated. So you're talking about the claim, not the action. Correct. And I apologize, Judge Huck, you're correct. It was the claim against the state officials was adjudicated. And it was appealed to this court, and that adjudication was affirmed. So our point here, Judge Fletcher, I think directly in response to your point is there are absolutely no allegations that the SWAT team has had any involvement with these parties since May of 2003, in which case they executed, they provided support for the execution of those search warrants. So there's absolutely no basis to claim, for Mr. Curry to claim, that his RICO claim against them does not constitute splitting of claims. Because that's all that he has done here. He asserted a Section 1983 claim against these individual officers. It was barred by the statute of limitations. And now he has turned around and said, well, I want to pursue a RICO claim against these exact same officers for the events that all predate the filing of his Section 1983 claim. I see that my time is up. I actually think that tells you really what the substance of our position is on this. Okay. I thank the Court. Thank you. Rebuttal. First and foremost, I want to apologize to Your Honor. I meant no sarcasm. And I mean that. Accepted. Thank you. Continue with your argument. If I may. We have had no discovery in the Bivens or the RICO action. It's been stayed from the get. So the only information we have is information that we've gleaned from the more than 800,000 pages of discovery we've had in the criminal case, which doesn't include very much about the activities. Mr. Bice is correct with respect to the SWAT team. We have nothing because we've been precluded from getting any information about their activities subsequent to the raid. And their involvement really kind of highlights the distinction between the acts and events underlying the Bivens action, which is really what culminated in the raid, and the subsequent activities by not just Mr. Dam and Mr. Halper, but they're the key players. And what they have done ever since then is manipulate and engage in misleading conduct toward witnesses by dangling criminal prosecution or civil collection of tax liability against these witnesses in exchange for their favorable testimony without ever actually making any deal with them. The other thing that has happened here, the extortion, is that Mr. Carey has been indicted now for a total of 158 counts of willful fated withhold and payover from people classified by Mr. Dam and Mr. Halper as employees who are, in truth and in fact, mostly independent contractors, as to whom Mr. Carey had no duty, not even a right to withhold and pay over, which was admitted by the revenue agent who testified at the first trial. On cross-examination by me, he finally conceded, well, we're not saying Mr. Carey really owes that money, but that he aided and abetted others in evading their responsibilities to, well, to withhold and pay over. The problem with that is it's not true. Most of them are indeed independent contractors. But the greater leap is that in order to prove guilt to this offense, Mr. Carey would have to be shown to know that these people were employees, when in fact that's never been established. You're out of time. Thank you, Your Honor. Thank you both for your arguments. The case just argued will be submitted for decision.
judges: Hug, Fletcher B. , Hawkins